Filed 2/19/25  Century City Mall v. Snowfin Franchise Group CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CENTURY CITY MALL, LLC, | B332014 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 23SMCV00617) |
| SNOWFIN FRANCHISE GROUP, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Small, Judge. Affirmed.

Ballard Spahr, Brian D. Huben and Juliana Romeu for Plaintiff and Respondent.

Park, Daniel E. Park, Alisa M. Morgenthaler, Samuel F. Izzo, Jason H. Woltman and Wil J. Rios for Defendant and Appellant.

Snowfin Franchise Group, LLC (Snowfin), appeals from the trial court's grant of summary judgment in favor of Century City Mall, LLC (Century City), in this unlawful detainer action. As the plain language of the lease agreement unambiguously required rent payment on the first of each month without a grace period, Century City's unlawful detainer action was timely and proper. There was no error in the trial court's order, and we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In August 2016, Century City and Snowfin entered into a commercial lease agreement for restaurant space in the Westfield Century City shopping center. The lease required Snowfin to pay rent "on or before the first day of each month, without prior demand or notice."

When rent was not paid on February 1, 2023, Century City served Snowfin with a five-day notice to pay rent or quit on February 2, 2023, demanding payment of unpaid rent. When Snowfin failed to pay or vacate, Century City filed an unlawful detainer complaint on February 9, 2023.

Century City then filed a motion for summary judgment, arguing it had a right to possession because Snowfin had failed to pay the February rent on or before February 1. Snowfin opposed, claiming a triable issue of fact exists whether the lease provided a 10-day grace period to pay rent. The trial court rejected this interpretation and granted summary judgment in favor of Century City on May 9, 2023. A judgment for possession of the property in favor of Century City was entered on June 23, 2023.

Snowfin filed a timely notice of appeal.

## DISCUSSION

### I. Standard of review

"A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) On appeal from a judgment entered after the trial court has granted a motion for summary judgment, we examine the record de novo. (*Ibid.*) We must liberally construe the evidence in support of the party opposing summary judgment and resolve any doubts concerning the evidence in favor of that party. (*Ibid.*)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the moving party carries this burden, the burden shifts and the opposing party has the burden of showing a triable issue of material fact. (*Ibid.*) The opposing party must make a prima facie showing sufficient to support its position. (*Ibid.*)

### II. Snowfin failed to raise a triable issue of fact

#### A. *Century City met its burden*

As the moving party, Century City had the initial burden to make a prima facie showing there were no triable issues of material fact and that it was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (p)(1).) Century City's burden was to prove each element of the cause of action entitling it to judgment. (*Ibid.*)

The sole cause of action was for unlawful detainer. Century City needed to establish (1) Snowfin had possession under a lease agreement with Century City, (2) Snowfin's default in the

3

payment of rent under the lease, (3) proper service of a valid three-day notice to pay rent or quit, and (4) Snowfin's failure to pay rent or quit the premises within the notice period. (Code Civ. Proc., former § 1161, subd. 2.)

Century City met this burden by presenting evidence of Snowfin's continued possession of the property following its failure to pay rent due on February 1, 2023, after a valid five-day notice to pay rent or quit was properly served on February 2, 2023, and Snowfin failed to pay the demanded rent or vacate the premises within the notice period.

Century City, therefore, established each element of its unlawful detainer action and the burden then shifted to Snowfin to show a triable issue of one or more material facts.

## B.   *No triable issue of material fact was shown*

Snowfin claimed there was a dispute of fact concerning whether it was in default for failing to pay rent on February 1, 2023, arguing the lease required Century City to provide a 10-day grace period to cure defects in the payment of rent. We disagree.

When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is reasonably susceptible to the interpretation urged. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) In sum, the court must give a reasonable and commonsense interpretation of the language, "as will make it lawful, operative, definite, reasonable, and capable of

4

being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.)

      **1.** *Lease section 2.07 is not reasonably susceptible to Snowfin's interpretation*

Section 2.07 of the lease is titled "**LATE CHARGE**," and states: "Unless specifically stated otherwise in this Lease, all Rental or other charges required to be paid by Tenant pursuant to this Lease shall be due and payable ten (10) days after demand, without any notice from Landlord and without any deductions or offsets whatsoever."

The limiting phrase, "Unless specifically stated otherwise in this Lease," clearly and explicitly excludes the 10-day period of that section when other lease provisions specify different timing requirements. Here, section 2.01(a) of the lease specifically states rent is due "in advance on or before the first day of each month, without prior demand or notice." Because lease section 2.01(a) specifically states a timing requirement for the payment of rent, lease section 2.07's 10-day period does not provide a protection or grace period from legal process but rather provides for the automatic late charge of 10 percent of what is owed after 10 days. In fact section 2.07 specifically notes, "Acceptance of such late charge by [Century City] shall in no event constitute a waiver of [Snowfin's] default with respect to such overdue amount, nor prevent [Century City] from exercising any of the other rights and remedies granted in this Lease."

Additionally, reading lease section 2.07 to create a 10-day grace period would create an absurdity. Section 2.01(a) states rent is due "without prior demand or notice." It would be absurd to interpret Section 2.07 to create a 10-day period "after demand" when section 2.01(a) explicitly states no demand is required.

Snowfin argued the five-day notice to pay rent or quit was a "demand" to which lease section 2.07 applies, providing a 10-day period for payment. Again, the limiting clause in lease section 2.07 bars this interpretation. Lease section 19.01(a) specifies that Century City has the right to terminate the lease and Snowfin's right of possession in the event of any failure of the tenant to pay rent for more than five days after written notice that such rent is due. Lease section 19.01 (Rights Upon Default) clearly specifies a five-day grace period, and lease section 2.07's 10-day period does not apply to the nonpayment of rent situation we have here.

### 2. *Snowfin failed to show ambiguity requiring extrinsic evidence*

Snowfin argues extrinsic evidence is necessary to interpret these provisions. However, extrinsic evidence is admitted only after a threshold finding the lease is ambiguous on its face or reasonably susceptible to the urged interpretation. (*Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1521 (*Bill Signs Trucking*).)

Lease section 2.07 creates a 10-day grace period only when no other lease provision specifies other timing. It is clear on its face. While a lease can be latently ambiguous if parol evidence shows it is reasonably susceptible to multiple interpretations (*Bill Signs Trucking, supra*, 157 Cal.App.4th at p. 1521), Snowfin failed to identify any evidence in the record demonstrating ambiguity.

Moreover, lease section 27.02 (Entire Agreement) bars using promises, agreements, conditions, or understandings from being used to "interpret, construe, supplement or contradict this Lease." Snowfin fails to explain how extrinsic evidence could be

6

used to interpret the lease when it is explicitly barred by lease section 27.02.

**3.** *The word "rental" does not create ambiguity*

Finally, Snowfin contends lease section 2.07's use of the word "rental" makes it reasonable to apply the 10-day grace period for late charges to rent demands. This argument ignores the limiting phrase that explicitly determines the 10-day grace period inapplicable when other lease provisions set forth other specific timing. The inclusion of "rental" does not override this clear limitation, particularly given lease sections 2.01(a)'s and 19.01(a)'s specific time requirements for rent payments and cures in the case of defaults in the payment of rent.

Given the clear and unambiguous lease terms, there is no genuine dispute regarding Snowfin's obligation to pay rent on February 1, 2023, or to pay the rent demanded in the five-day notice to pay rent or quit. Snowfin's failure to present any evidence creating a triable issue of material fact results in Century City's entitlement to summary judgment.

## DISPOSITION

The judgment is affirmed, and Century City Mall, LLC, is awarded its costs on appeal.

CHAVEZ, J.

We concur:

ASHMANN-GERST, Acting P. J.     RICHARDSON, J.

7